not be made liable for a deficiency under his contract. When the new sale was made by the referee without seeking to take steps to charge Waters upon his former bid he necessarily abandoned the bid which Waters had made, and the contract made upon that bid was at an end. Anthon v. Batchelor, 22 Abb. N. C. 423, 5 N. Y. Supp. 798. For that reason, also, the order made at the special term was correct.

The order must therefore be affirmed, with $10 costs and disbursements. All concur.

---

### METROPOLITAN LIFE INS. CO. v. STANDARD NAT. BANK.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

1. LEASE—RENT—WAIVER OF CONDITION.
    A bank, which leases a building for bank purposes, with a provision that the rent shall be a certain amount so long as the lessor keeps a deposit of $50,000 with it, by going into voluntary liquidation, and thus preventing the lessor from keeping with it the deposit, waives the condition that he shall do so.

2. COSTS—EXTRA ALLOWANCE.
    Action of the trial court in making an extra allowance will not be disturbed, no good reason appearing for interfering with it.

Appeal from trial term, New York county.

Action by the Metropolitan Life Insurance Company against the Standard National Bank. From a judgment for plaintiff (57 N. Y. Supp. 797), defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Artemus B. Smith, for appellant.

C. N. Bovee, Jr., for respondent.

McLAUGHLIN, J. At the opening of the trial the plaintiff moved for a judgment upon the pleadings, which was granted, with an extra allowance of $100, and the defendant has appealed.

Two questions are presented: First, whether, upon the complaint and answer, any issue was presented; and, second, whether the court erred in granting an extra allowance. The complaint contained three separate causes of action, upon two of which it seems to have been conceded upon the trial, as it was upon the argument before us, that the plaintiff was entitled to recover. The third cause of action, which was the principal one, charges that on the 17th of April, 1895, the parties entered into a written agreement, a copy of which is attached to the complaint, by which the plaintiff leased to the defendant, for a bank, and for no other purpose, for a term of five years, commencing on the 1st of May following, certain premises situated in the city of New York, for a certain yearly rent, which was to be determined under the terms of the lease, as follows:

"The minimum yearly rent shall be $4,000, such minimum amount to be payable monthly in advance on the first day of each and every month. The actual yearly rent shall be adjusted at the end of each year of this lease,

and the party of the second part shall pay as rent to the party of the first part, at the end of each rental year, the additional sum of $1,000 for each amount of $100,000 of deposits of the party of the second part in excess of $100,000, it being expressly agreed that the amount of deposits to be considered on the basis of rent shall be the average amount of deposits of the bank, the party of the second part, reached at any time during the rental year. But it is agreed that such additional sum payable as rent over and above the minimum yearly rent of $4,000 shall not exceed in any one rental year the sum of $4,000."

The defendant took possession of the premises, and continued to occupy the same under the lease until the 10th of July, 1896, when an additional or supplemental agreement was made, by which it was agreed that, in consideration of the plaintiff depositing with the defendant the sum of $25,000 in addition to the $25,000 which it then had on deposit, making in all $50,000, and thereafter keeping the same good, the defendant would, during the term of the written lease, pay rent at the rate of $8,000 per year. The defendant made the deposit according to the agreement, and the plaintiff continued to occupy said premises until the month of April, 1898, paying rent from the time the supplemental agreement was made until the latter date at the rate of $8,000 per year. The answer, while denying each allegation of the complaint as to the deposit of the $50,000, admits that the "plaintiff did, on the 10th day of July, make a deposit of $25,000 with the defendant,  *   *   * and alleges that the sum of $25,000 was deposited by the plaintiff on the 10th of July, 1896, pursuant to an agreement made between the plaintiff and the defendant, whereby it was agreed that, so long as the balance on deposit in said bank to the credit of this plaintiff should equal at least the sum of $50,000, the defendant would pay rent to the plaintiff at the rate of $8,000 per annum, and no longer; and that, when the balance on deposit in said bank to the credit of said plaintiff should be less than the sum of $50,000, then and thereafter the defendant should pay rent to the plaintiff in accordance with the terms and provisions of the lease referred to, and not otherwise." The answer further alleged that in April, 1898, the defendant went into voluntary liquidation, and entirely ceased to transact business thereafter.

It seems to us that no issue was presented by these pleadings. The lease was admitted, and the deposit of the $25,000, making $50,000 in all, and that, after such deposit had been made, the defendant paid rent at the rate of $8,000 per year until the month of April, 1898, when the defendant went into voluntary liquidation. The only possible question which could be raised was whether this deposit was kept good. This fact is, as it seems to us, not only admitted in the answer (at least there is no denial in it of the allegation in the complaint to that effect), but it was also expressly admitted upon the oral argument before us. It is, however, urged that the bank, having gone into voluntary liquidation, and thereby having prevented itself from holding the $50,000 deposited with it, was thereby relieved from its obligation to pay the additional rent which depended upon the $50,000 being kept on deposit. In other words, the appellant contends that, the defendant having

abandoned its business, the plaintiff was thereby relieved from its obligation to make or keep with it the deposit of $50,000 provided for in the supplemental agreement, and by reason thereof the defendant was relieved from its obligation to pay the additional rent conditioned upon such deposit being made and kept good. We cannot adopt this view. The defendant having rendered it impossible for the plaintiff to keep with it the deposit provided for, the plaintiff was thereby released from all obligation on its part in that respect, but the defendant nevertheless remained liable to pay the rent as it had agreed to do. It could not, by its own act, destroy the contract, and release itself from the obligation therein imposed. A party who disables himself from performing his contract before default by the other party waives the performance of acts by the latter which, except for such disability, he would be bound to perform as conditions precedent to a recovery on the contract. Hawley v. Keeler, 53 N. Y. 114; Woolner v. Hill, 93 N. Y. 576. Applying this principle, it is clear that the question presented was properly disposed of by the learned trial court. The defendant disabled itself from performing the contract on its part by going into voluntary liquidation, and by such act it waived the condition which might have been insisted upon, had it been in a condition to perform itself, namely, that the $50,000 deposit should be kept good by the plaintiff. Having done this, it cannot now complain upon that ground; neither can it be relieved—the plaintiff being able, ready, and willing to perform—from the payment of the additional rent provided for in the supplemental agreement. As to an extra allowance, that was a question for the trial court to pass upon, and we see no good reason for interfering with the decision there made.

The judgment is right, and must be affirmed, with costs. All concur.